## RUFUS DWINEL *versus* CHARLES SAWYER.

If the defendant receive the plaintiff's money as from the agent of the plaintiff, both of whom are his debtors, without having reason to believe it was sent by the latter, and appropriate it to the credit of the agent, the plaintiff cannot recover it back.

The distinction between money and other property.

ON REPORT from *Nisi Prius*, APPLETON, C. J., presiding. ASSUMPSIT for money had and received.

This case has been before the Court once before.

The facts sufficiently appear in the opinion of the Court.

The case was taken from the jury and continued on report, for the Court to render judgment on nonsuit or default, according to the legal rights of the parties; the Court to draw any inferences of fact which a jury might.

*J. A. Peters,* for the plaintiff.

*A. W. Paine,* for the defendant.

Dwinel *v.* Sawyer.

BARROWS, J.—Assumpsit for money had and received.

In the winter of 1853–4, one Marsh was engaged in hauling logs by the M. for the plaintiff, and, while thus engaged, contracted a debt on his own account, with the defendant, for the board of his men. The following spring, said Marsh was employed by plaintiff, as his agent, to oversee the driving of these logs, and, while thus employed, contracted a debt to the defendant, on plaintiff's account, for the board of the men engaged in the driving. In the summer of 1854, plaintiff furnished his agent, Marsh, with money to pay this last bill, having previously settled with him for the hauling by the M. This money, according to the testimony of plaintiff and Marsh, was placed in Marsh's hands for the special purpose of paying plaintiff's debt to defendant, and with instructions to Marsh to carry or send it to defendant for that purpose, but without special directions as to how it should be sent. Marsh did send the money by Greenlief Hill, a stage driver, and he testifies that he sent with it, by Hill, a verbal message to defendant that it was to pay the plaintiff's bill, and that defendant was to return a receipt in full for the bill, the amount thus forwarded being some twelve dollars less than the amount of the original bill. Hill's testimony is not in the case, and the only evidence we have, as to the manner in which he did his errand, is from the defendant, who testifies that Hill stated, when he gave him the money, that it was sent by Marsh on his account, and that he wanted a receipt. Defendant gave a receipt accordingly, running to Marsh, and credited the amount on Marsh's bill. Hill carried the receipt to Marsh who looked at it and put it in his pocket, it would seem, without at that time notifying either plaintiff or defendant that there was any misappropriation of the money. Sawyer subsequently sued Dwinel for his bill, recovered and collected a judgment against him for the whole amount with costs, Dwinel being defaulted at the second term, after having appeared and answered to the suit.

Thus far there seems to be no material contradiction in

the testimony, and the foregoing facts may be considered as proved.

Did Sawyer know that the money, sent by Marsh through Hill, was Dwinel's money? If he did not know it, but received the money in good faith, as from Marsh, and appropriated it to the partial payment of his just claim against Marsh, then the plaintiff cannot recover in this action, although his agent, Marsh, may have misappropriated the money given him by the plaintiff to pay his debt to the defendant, or allowed it to be appropriated to the payment of his own debt instead of the debt of the plaintiff, which it was designed to pay, thereby subjecting his principal to loss. For Marsh was the plaintiff's agent, not the defendant's. Both alike appear to have been creditors of Marsh, but he whose *agent* he was must bear the loss occasioned by his misfeasance or neglect. And, for the purposes of this case, Marsh and his principal would be accountable for Hill's mistakes or neglects.

If Hill had delivered the message which Marsh says he sent with the money, then the defendant would have been bound to appropriate the money to the payment of Dwinel's bill, and even Marsh's subsequent or contemporaneous assent to have it appropriated to his own debt instead of Dwinel's could not have availed the defendant. *Reed* v. *Boardman*, 20 Pick., 446.

But it is equally certain that if Hill delivered the money as from Marsh, without other directions as to its appropriation than those which the defendant testifies to, the defendant might lawfully appropriate it to the payment of his claim against Marsh, and the plaintiff, or any other person who had trusted his money in Marsh's hands, must bear the loss if loss be occasioned thereby. For, while it is true that an agent cannot sell or dispose of property *other than money*, without authority, even to a *bona fide* purchaser, so that it would not be liable to be reclaimed by the owner, yet, *in regard to money, the law is different*, not merely on account of the difficulty of identifying, but because it would be an

insupportable burden upon the business community if they were obliged, at their own proper peril, to ascertain that every dollar they receive in the ordinary course of business is lawfully in the hands of him from whom they receive it, with power to dispose of it as he undertakes to do. *Lime Rock Bank* v. *Plimpton & al.*, 17 Pick., 159; *Gammon* v. *Butler*, 48 Maine, 344.

And we look in vain through the case for testimony which can countervail the positive statements of the defendant, that he supposed it was Marsh's money, and to be credited on *his* account; that he knew nothing about where the money came from except what Hill told him (as above stated) ; that he did not know that Dwinel claimed that it was to pay his bill until long afterwards. On the contrary, the fact that Marsh received the defendant's receipt for the money as appropriated to the payment of his own account, looked at it and put it in his pocket, and, according to his own testimony, did not inform the defendant that there was any mistake until some four weeks afterwards, strengthens the supposition that it was forwarded and received in the manner described by the defendant, and it is to be observed that Marsh's account of the conversation, which, he says, then took place between him and the defendant, (of which the defendant gives such a different account,) is entirely consistent with the hypothesis that he supposed himself then, for the first time, communicating to the defendant the fact that the money belonged to Dwinel, and ought to be credited to him. Such notice, if then first given, could not avail the plaintiff. *Lime Rock Bank* v. *Plimpton*, before cited.

It is true that Dwinel says that he learned that defendant had a bill against him for which he would take $65, and that he therefore gave Marsh that particular sum to pay the bill. If it were proved that Sawyer ever agreed to take that sum for his bill, the subsequent receipt of the precise amount might be considered as evidence that he must have known that it was Dwinel's money and ought to be appropriated to his account. But the defendant swears that he never of-

fered to take less than the $77,10, and was never asked to do so. Marsh nowhere testifies that there was any such arrangement. We can only infer that Dwinel's information came from Marsh, and that Marsh so confidently supposed that he could adjust the bill for that amount in cash, that he undertook to do it without consulting the creditor in the matter. If this were so, the particular amount forwarded would furnish no indication to Sawyer from whence the money came.

There is nothing in the case to justify the conclusion that the defendant knew that it was Dwinel's money, or that it was paid to, or received by him in any manner inconsistent with his lawfully appropriating it to the payment of Marsh's debt, as he seems to have done.

It is not necessary to determine whether, under the circumstances of this case, the plaintiff is estopped by the judgment in Sawyer's suit against him, for upon well settled principles pertaining to the law of agency as relating to the transmission of money, and the appropriation of payments, the plaintiff must be considered as having failed to make out a case.            *Plaintiff nonsuit.*

WALTON, DICKERSON and DANFORTH, JJ., concurred.

CUTTING and KENT, JJ., concurred in the following opinion drawn by

APPLETON, C. J. — When this case was presented before for consideration, the facts were very briefly and imperfectly reported. The defendant, for aught then appearing, might have designedly misapplied the money of the plaintiff to the payment of the debt of Marsh. But such a misappropriation, with a knowledge on the part of the defendant of all the facts, would have been a fraud upon the plaintiff, who might, in such case, well sustain an action for money had and received.

But it now appears that the defendant received the money as the money of Marsh, and passed it in good faith to his credit. If there was a mistake, it was through the negli-

gence of the plaintiff's agent. The defendant is not shown to be in fault. A long time elapsed before he was advised that the money belonged to the plaintiff. The plaintiff, if his agent has misapplied his funds, must abide the result, especially in a case where the defendant is without blame. The distinction between money and specific articles is too well settled to be disturbed. *Plaintiff nonsuit.*